Tbe opinion of tbe Court was delivered by
Dargast, Ch.
Tbe third clause of tbe will of Mary Ellis, is in tbe following words: “ I will and bequeath to my daughter Mary Ann L. Ellis, one negro girl named Annie; and her future increase, to be hers, and hers only, during her natural life, and at her death to be equally divided among tbe issue of her body, and not to be subject to tbe debts of her husband or any other person, also one cow and calf, &c.”
Tbe question principally discussed in this case, and tbe one which presented tbe greatest difficulty to tbe mind of tbe Court, is whether by tbe terms of this bequest, Mary Ann L. Ellis, the plaintiff, (now Mrs. Scurry,) took a separate estate in tbe negro girl Annie. Eor Annie bad been sold by tbe legatee’s husband, E. Madison Scurry, and bought by tbe other defendant William H. Woods. And this suit was instituted to recover the said negro Annie from tbe purr chaser.
. What language is necessary to create a separate estate, where express and technical words bave not been employed for tbe purpose, has given rise to much discussion in tbe Courts of England and America, and tbe result in tbe decision of cases, has been various, and contradictory. At one time tbe current of tbe decisions has run strongly in favor of tbe husband; and as remarked by a learned commentator, 2 Story’s Eq. Jur. 821, note, “tbe case of Brown vs. Clark, 3 Ves. 166, shows bow nicely language has sometimes been interpreted to sustain tbe marital rights of tbe husband.’’ *23 On the other hand there is a class of cases, which verge to the extreme in. the opposite direction. Upon the question whether Mary Ann L. Ellis takes a separate estate by the will of her mother, a decision either way might be supported by a very formidable array of authorities. Nor are the decisions of'the Courts of South Carolina entirely free from the imputation of vacillation. Amidst all the discordance of the decisions, one principle is recognized throughout, namely, that technical or express words are not necessary to create a separate estate. And from the decided cases, another principle is clearly deducible; and that is, a separate estate may be created by implication, where there is a manifest intent. In the application of the last mentioned principle, the difficulty has always been in determining by what degree of force, such implication should appear. I doubt not, that in some cases, language too slight for such a purpose has controlled the interpretation unfavorably to the marital rights. Whilst in an equal number of cases, the marital rights have been sustained in violation of a manifest intent to create a separate estate. The only safe and rational rule that can be laid down as applicable to such cases is one, the enforcement of which ■must depend much upon the discreet judgment of the Court. If it appear to the satisfaction of the Court, upon a fair construction of the whole instrument, without wresting the meaning, either to sustain the marital rights, or the separate rights of the wife, that there is a manifest intent to create a separate estate, such intent should be effectuated, though no express words of that import should be employed.
One of the grounds, upon which a separate estate has been implied in favor of the wife, is where, by the instrument creating the estate, she is clothed with a dominion over the property, which would be inconsistent with the marital rights. There is a numerous class of cases to this effect. Another class of cases, equally numerous, goes to establish the principle, that where the marital .rights are restricted and curtailed, *24 sucb restrictive provisions can bave no other reasonable interpretation, than that a separate estate was intended for the woman. Both of those presumptions are founded upon fair and logical inductions; and where technical and express words are not employed, there can be no stronger grounds for believing that a separate estate was intended to be created. I come now to apply these principles to the facts of this case. The testatrix gave the negro girl, Annie, to her daughter, “ to be hers and hers only" &c. If it was to be a simple gift, upon which the marital rights could attach, why was it made in this form ? What is the import of the words “ to be hers and hers only,” — words not at all necessary, unless they imply an intention to create a separate estate? The testatrix obviously meant, that the estate should be her daughter’s, and “ hers only,” in contradistinction to, and in exclusion of, the rights of some other person; and the person meant can be none other than the husband, for in reference to no other person would the language have any sense or meaning. Not satisfied with this manifestation of her intention, the testatrix proceeds to declare.that the property bequeathed “should not be subject to the debts of the husband ” of the legatee. One of the essential incidents of property is, that it is subject to the debts of the proprietor. And this restriction upon the marital rights is incompatible with any other interpretation, than that the testatrix intended to create a separate estate in her daughter, as to the property in question. It is the opinion of the Court, that Mary Ann L. Ellis (now Mrs. Scurry) took a separate estate in the negro girl, Annie. I do not think that Elias Ellis, the testatrix’s executor, is a trustee of the estate. There is no indication of an intention to appoint him a trustee, or to give him any other duties or powers, beyond those that were incident to his office of executor. But no trustee was necessary; or, rather, the want of one, by the appointment of the will, will not invalidate the provision creating the separate estate. Boper, in his treatise on Husband and Wife, *25 2 vol., 156, says, “ it is settled, that-when the intention appears that the property bequeathed to, or settled on, the wife, shall be to her sole and separate use, whether it is so given immediately, without the intervention of trustees, or to .the husband for her, a Court of Equity will effectuate the intention by converting the husband into a trustee for the wife.” i
E. Madison Scurry, the husband, is regarded by the Court as the trustee of the plaintiff, his wife. And the other defendant, William H. Woods, has confessedly purchased the trust property from the trustee.
It is equally well settled as a principle, in this Court, that a purchaser of the trust property from a husband, being a trustee as in this case, or from any other trustee, for a valuable consideration, without notice, will be protected in his title; for where the equities are equal, and the property is equitable, the Court will not disturb the title of a Iona fide purchaser of property which he has acquired for a valuable consideration. To sustain himself in this ground of defence, it is necessary for the purchaser to show that he has paid the consideration, and if it appears that he has not completed the purchase, by paying the consideration before he has had notice of the plaintiff’s equity, he will be held, as a trustee, in the place of him from whom he purchased, and be accountable to the same extent.
In this case, as to the terms of the purchase and its consummation, there is no proof before the Court, save that which is contained in the defendant’s answer. He says that he purchased the negro .from his co-defendant, E. Madison Scurry, on the 6th day of April, 1853, for the sum of six hundred and seventy-five dollars, which he considers equivalent to her value, and that this was before he had notice of the plaintiff’s claim. The defendant, Woods, does not say that the purchase money was paid, and the contract completed, before he had notice, nor does it appear that it has yet been paid. The payment of the price is not necessarily implied in *26 what be says in bis answer. A person may be properly said to purchase property when be bas entered into a contract or agreement for that purpose, although the consideration may not be paid. To sustain a defence like this, the completion of the contract should be proved.
Besides this, the evidence of the fact, as far as the proof goes, rests solely upon the allegations of the defendant’s answer. This is not sufficient, if the statement had been positive as to the payment of the purchase money before notice. His answer is not evidence on this point. It is not responsive. He was not interrogated as to these particulars. Setting up in his answer a matter of defence, he was bound to prove it by competent evidence.
For a purchaser from a trustee to be protected in his title, he must be a purchaser without notice, express or implied. The Court is of opinion, that the defendant, Woods, had implied notice. The will of Mary Ellis, which created this separate estate, had been admitted to probate It was on file in the office of the Ordinary. It was of record there. This was implied notice. The proceedings of all our Courts are public. Their records, as those of every public office where records are kept, are open to the inspection of every citizen of the country, who has an interest or an inclination to inquire or investigate. The keepers of such records are bound to produce and exhibit them on demand. When one purchases land from a defendant in execution, he cannot protect himself in the purchase, or set aside the lien of the judgment, on the plea that he had no notice of the enrolment of the judgment ; or, if he purchases a negro, or other chattel, he cannot avoid the prior claim of the plaintiff in the execution, on the ground that he was not aware that such execution was lodged in the office of the sheriff. In these instances, the purchaser has implied notice. I think that public policy requires that the doctrine should be broadly declared, that the records of all eur Courts should be implied notice in all cases, except *27 where legislative Acts have or shall modify or restrict the doctrine. The conclusion at which I have arrived is, that the defendant, Woods, has purchased the separate trust estate of the plaintiff, Mrs. Scurry, without proof of having paid the purchase money before notice of the plaintiff’s equity, and, in fact, with implied notice of that equity. On the plainest principles applicable to the subject, he must make restitution. Upon the question, whether Mrs. Scurry takes, by the said will, only a life estate, and whether her issue, after her death, will be entitled to take by way of remainder, the Court has made no decision; a judgment upon that question not being necessary to the adjudication of this case.
It is ordered and decreed, that the circuit decree be reversed, and that the defendant, 'William H. Woods, deliver to the plaintiff, Mrs. Mary Ann L. Scurry, the said negro Annie, on or before, the first day of February next, and that he do account before the Commissioner, to the said plaintiff, for the hire of the negro from the 4th day of April, 1853. And in default of the restitution of the said negro, as herein directed and required, it is further ordered and decreed, that the said William H. Woods do account to the said plaintiff for the value of the said negro Annie, and the profits of her labor from the 4th day of April, 1853. It is further ordered and decreed, that the defendants pay the costs.
JOHNSTON and Dunkin, CO., concurred.